UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SAMUEL ABRAHAM, | : | Civil Action No. 07-2254 (AET) |
| Plaintiff, | : | |
| v. | : | |
| | : | M E M O R A N D U M |
| MOSHE M. ROTHKOPF, et al., | : | O P I N I O N |
| Defendants. | : | |

**HUGHES, U.S.M.J.**

**I.    INTRODUCTION**

This matter has come before the Court upon Motion by Plaintiff Samuel Abraham ("Plaintiff") to Extend Time to Serve an Affidavit of Merit on Defendant Campus Eye Group Ambulatory Surgical Center ("Defendant") [dkt. entry no. 21], returnable July 7, 2008. Defendant filed opposition to Plaintiff's motion as well as a Cross-Motion to Dismiss with Prejudice on June 22, 2008 [dkt. entry no. 22]. Plaintiff filed a reply brief and opposition to Defendant's cross-motion on June 30, 2008 [dkt. entry no. 24]. The Court heard oral argument on this matter on August 7, 2008. For the reasons stated herein, Plaintiff's motion to extend time to serve an affidavit of merit is granted and Defendant's cross-motion is denied.

**II.    BACKGROUND AND PROCEDURAL HISTORY**

This litigation arises from an alleged injury sustained by Plaintiff during cataract surgery. (*See* Pl.'s First Am. Compl. at 4.) Plaintiff alleges that Defendants acts of medical negligence may have caused or contributed to the injuries and damages sustained by Plaintiff. *Id.* at 6-7. Plaintiff also alleges that Dr. Rothkopf failed to properly inform him of the risks of and alternatives to his cataract surgery. *Id.* at 5-6.

On or about September 15, 2005, Plaintiff consulted with Dr. Rothkopf and was advised to undergo cataract surgery and intraocular lens implantation. *Id.* at 3-4. At the time of this

consultation, Plaintiff had vision in only his left eye. *Id.* at 3. Plaintiff underwent cataract surgery on November 22, 2005 on Defendant's premises. *Id.* at 4. Dr. Rothkopf performed the surgery and was assisted by one or more of Defendant's nurse employees. *Id.* Surgery was possibly complicated by the rupture of Plaintiff's posterior capsule or an expulsive hemorrhage. *Id.* As a result of the surgery and injuries allegedly suffered, Plaintiff is now completely blind. *Id.*

On May 14, 2007, prior to amending his complaint, Plaintiff submitted an Affidavit of Merit as to Dr. Rothkopf. (*See* Kazam Aff. at 1-2.) Later, at an initial discovery conference, Dr. Rothkopf's attorney represented that the reason Plaintiff had sustained injuries was because one of the assistant nurses had improperly loaded the cataract lens injector. (*See* Paldino Certification at 2.) Relying on the representation of Dr. Rothkopf's attorney, Plaintiff amended his complaint on September 19, 2007 to include Defendant and any nurses who assisted Dr. Rothkopf. *Id*. The May 14, 2007 Affidavit of Merit that accompanied the original complaint did not mention Defendant Campus Eye Group. (Kazam Aff. at 1-2.)

On March 25, 2008, Plaintiff served an Affidavit of Merit as to Defendant. (Paldino Cert. at 3; *see also* Yuro-Altieri Aff. at 1-2.) Defendant Campus Eye Group objected to the March 25, 2008 Affidavit of Merit because the it failed to set forth the author's sufficient expertise in the field of ocular nursing or eye surgery nursing. (Paldino Cert. at 3.) Following Defendant's objection, Plaintiff consulted with other nurses in the field of eye and cataract surgery to satisfy the requirements of the New Jersey Affidavit of Merit Act. *Id*. at 3-4. The nurses Plaintiff consulted indicated that the function of loading or checking a cataract lens injector is not typically a nursing function. *Id*. at 4. Plaintiff asserts that nurses are not willing to author an affidavit of merit based solely on the representation of Dr. Rothkopf's attorney since

that assertion is contrary to standard practice and there is no apparent support for that assertion in the medical records produced by Defendant. *Id.* There is currently no sworn testimony or evidence to substantiate the representation of Dr. Rothkopf's attorney. *Id.*

## III.   DISCUSSION

Plaintiff argues that the facts of this case present the extraordinary circumstances necessary to excuse Plaintiff's failure to timely provide an appropriate affidavit of merit as to Defendant. Plaintiff also asks that he be exempted from filing an affidavit of merit until after the deposition of Defendant Dr. Moshe Rothkopf. Defendant, in opposition, argues that New Jersey law forbids extensions of time for affidavits of merit beyond the 120-day statutory framework.

The issue is whether the Court should extend the time to serve an affidavit of merit beyond the 120-day statutory framework, because the facts of this case meet the standard necessary to excuse Plaintiff's noncompliance with the New Jersey affidavit of merit statute.

The New Jersey affidavit of merit statute is considered substantive, not procedural, law applicable in federal diversity cases. *See Chamberlain v. Giampapa*, 210 F.3d 154, 161 (3d Cir. 2000). Pursuant to the New Jersey affidavit of merit statute:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit by an appropriate licensed person, stating that there exists a reasonable probability that the care, skill or knowledge exercised, or exhibited, in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

N.J.S.A. 2A:53A-27.

The main purpose of the affidavit of merit statute is to "weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court." *Couri v. Gardner*, 801 A.2d 1134, 1141 (N.J. 2002); *see also Hubbard v. Reed*, 774 A.2d 495, 500 (N.J. 2001). According to the New Jersey Supreme Court:

> If defense counsel files a motion to dismiss after the 120-day deadline and before plaintiff has forwarded the [affidavit of merit], the plaintiff should expect that the complaint will be dismissed with prejudice *providing the doctrines of substantial compliance and extraordinary circumstances do not apply.* That formulation places strong incentives on both plaintiffs' and defense counsel to act diligently.

*Ferreira v. Rancocas Orthopedic Assocs.*, 836 A.2d 779, 785 (N.J. 2003) (emphasis added).

The doctrine of substantial compliance requires a party to show (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of the petitioner's claim; and (5) a reasonable explanation why there was not a strict compliance with the statute. *Cornblatt v. Barow*, 708 A.2d 401, 411 (N.J. 1998). The doctrine of substantial compliance requires "a fact sensitive analysis involving the assessment of all the idiosyncratic details of a case to determine whether 'reasonable effectuation of the statute's purpose has occurred.'" *Galik v. Clara Maass Med. Ctr.*, 771 A.2d 1141, 1150 (N.J. 2001) (quoting *Cornblatt*, 708 A.2d. at 411-12). This threshold requirement seeks to balance the interests of reducing frivolous lawsuits and the "*imperative* of permitting injured plaintiffs the opportunity to pursue recovery from culpable defendants." *Kindig v. Gooberman*, 149 F. Supp.2d 159, 163 (D.N.J. 2001) (emphasis added) (quoting *Fink v. Thompson*, 772 A.2d 386, 391 (N.J. 2001)). Because the legislature "did not intend the statute to be applied literally and strictly, in each case the court is 'required to assess the facts against the clearly defined elements to determine whether technical non-conformity is excusable.'" *Kindig*, 149 F. Supp.2d at 164 (quoting *Galik,* 771 A.2d at 1149).

In *Kindig*, the United States District Court for the District of New Jersey held that the plaintiff substantially complied with the procedural requirements of the affidavit of merit statute. *Id.* at 164-66. The District Court also found that defendants were not prejudiced by a timely served unsworn expert report because defendants did not show how they were prejudiced by the expert report nor did defendants show how the expert report would cause them any undue burden. *Id.* at 164. Ultimately, the court stated, "Defending a meritorious claim does not prejudice defendants, and, therefore, plaintiff's expert report satisfies the first factor of the substantial compliance test." *Id.*

Here, Plaintiff has demonstrated substantial compliance with the affidavit of merit statute by satisfying each of the four necessary elements.

    A.    <u>Lack of Prejudice to the Defending Party</u>

Defendant is not prejudiced because Defendant was on notice that it was involved in this lawsuit. To be sure, Plaintiff filed an affidavit of merit on Defendant but later withdrew it because Defendant argued that it was insufficient. Thus, Defendant had actual notice Plaintiff intended to add them to this lawsuit. Because Defendant had actual notice, they cannot now argue unfair surprise. The Court, therefore, finds that allowing Plaintiff additional time to file the affidavit of merit will in no way prejudice Defendant.

    B.    <u>A Series of Steps Taken to Comply with the Statute Involved</u>

Plaintiff has taken a series of steps to comply with the affidavit of merit statute. Plaintiff had timely served an affidavit of merit on Defendant Dr. Rothkopf on May 14, 2007. Plaintiff had also timely served an affidavit of merit on Campus Eye Group on March 25, 2008. After Defendant's objection to the March 25, 2008 affidavit, Plaintiff consulted with several other nurses to try and obtain the proper affidavit of merit, but was unsuccessful because a nurse's

5

loading or checking of a cataract lens injector is contrary to a nurse's standard practice and is unsupported in the medical records received by Defendant.  It was only after reviewing records and consulting with nursing experts that Plaintiff's counsel determined discovery beyond the previously-produced medical records was needed.  (*See* Pl.'s Reply at 3.)  Plaintiff also submitted this motion prior to the expiration of his deadline in which to serve the affidavit of merit on Defendant.

      C.     A General Compliance with the Purpose of the Statute

Corresponding with the "series of steps" factor, Plaintiff has generally complied with the purpose of the affidavit of merit statute.  "Considering the statute's underlying purpose to ferret out meritless claims, the court in *Galik* determined that the series of steps taken by plaintiff 'constituted a substantial good faith effort to comply with the statute and to satisfy its underlying purpose.'" *Kindig*, 149 F. Supp.2d at 165 (quoting *Galik,* 771 A.2d at 1151).  Plaintiff's series of steps taken to obtain, file and serve an affidavit of merit "demonstrates a desire to fulfill the threshold requirement, thus complying with the purpose of the statute." *Id.*

      D.     A Reasonable Notice of the Petitioner's Claim

Defendant had reasonable notice of the malpractice claim.  Plaintiff's filing of his first Amended Complaint first gave them notice.  Defendant had time to file an answer to Plaintiff's Complaint and had time to file an opposition as well as a cross-motion to Plaintiff's motion to extend time.  Plaintiff has complied with all of Defendant's discovery requests and Defendant had enough time to object to Plaintiff's March 25, 2008 affidavit of merit.  It is clear that Defendant had ample notice of Plaintiff's claim.

      E.      <u>Reasonable Explanation Why There was Not Strict Compliance with the Statute</u>

Plaintiff has presented a reasonable explanation of why he did not strictly comply with the affidavit of merit statute. Plaintiff relied on the representation of Dr. Rothkopf's attorney that one of the assisting nurses was potentially liable for the alleged injuries. Plaintiff's counsel only recently learned that the medical records produced by Defendant alone do not contain a sufficient basis for a nursing expert to conclude that the lens injector was improperly loaded by one of the assisting nurses. (Pl.'s Reply at 3-4.)

The facts of this case permit technical non-conformity to be excusable. Plaintiff behaved diligently and was not merely "sleeping on his rights." (*See* Def.'s Br. at 8.) Defendant is not unduly burdened while Plaintiff still carries the burden of serving an affidavit of merit on Defendant. Plaintiff has also demonstrated a desire to fulfill the requirements of the affidavit or merit statute on more than one occasion. Therefore, Plaintiff substantially complied with the Affidavit of Merit statute and circumstances exist that warrant relaxation of the statutory requirements.

**IV.**    **CONCLUSION**

For the reasons stated above, Plaintiff's motion to extend time to serve an affidavit of merit is granted and Defendant's cross-motion is denied. It is further ordered that Plaintiff will have thirty (30) days to serve an Affidavit of Merit as to Defendant Campus Eye Group Ambulatory Surgical Center. The Court will not schedule Dr. Rothkopf to appear for deposition as Plaintiff has been free to conduct that deposition at any time. However, the Court will order Dr. Rothkopf to submit an affidavit no later than August 15, 2008 on the sole issue of who loaded the lens injector.

**DATED: August 7, 2008**